UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ABDUL-LATIF LIGHTNER
*f/k/a Kenneth J. Lightner*,

              Plaintiff,

   v.

S. WENDERLICH,

              Defendant.

**DECISION AND ORDER**

6:15-CV-6195 EAW

## **INTRODUCTION**

Plaintiff Abdul-Latif Lightner ("Plaintiff"), *pro* se, brings this action against defendant, S. Wenderlich ("Defendant"), Superintendent of Southport Correctional Facility ("Southport"), where Plaintiff was formerly incarcerated, pursuant to 42 U.S.C. § 1983. The claims that remain at this stage of the proceedings are causes of action 5, 8, 14, 20, 23, and 26.[1] Plaintiff alleges that, as a result of his religious designation as a Muslim, Plaintiff was given a diet that did not comport with the dictates of his religion (causes of action 5 and 8) and was denied the ability to participate in an Islamic study correspondence course (causes of action 14 and 26), in violation of the First and Fourteenth Amendments. (Dkt. 8 at 3-8). Plaintiff also alleges that he was denied the right to

---

[1]     Plaintiff originally raised additional claims against the New York State Department of Corrections and Community Supervision ("DOCCS"), Southport, and Karen Bellamy. The Court terminated those three defendants in an order issued on July 11, 2016. (Dkt. 12 at 4). The Court also dismissed with prejudice Plaintiff's claims under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc *et seq*. (*Id*.).

- 1 -

participate in congregate religious services, in violation of the First and Fourteenth Amendments (causes of action 20 and 23), but he now asks to withdraw those claims. (Dkt. 21 at 2).

Defendant has filed two separate motions to dismiss the complaint. Defendant moves to dismiss pursuant to Local Rule of Civil Procedure 5.2(b) on the ground that Plaintiff failed to update his address between January 6, 2017, and February 7, 2017. (Dkt. 25). Defendant also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 14). For the reasons set forth below, Defendant's motion to dismiss pursuant to Local Rule 5.2(b) is denied. Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from Plaintiff's complaint.

At the time of the events giving rise to this complaint, Plaintiff was incarcerated at Southport. (Dkt. 8 at 3-8). Causes of action 5 and 8 concern the diet that Defendant provided Muslim inmates at Southport. (*Id.*). Plaintiff is a practicing Muslim and therefore requires a religious dietary accommodation. (*Id.*). According to Plaintiff, Defendant denied him a diet "in accordance with [his] Islamic faith." (*Id.*). Plaintiff alleges that Defendant failed to provide "Halal food" and forced Plaintiff to eat vegetarian meals, "coerc[ing] [him] into another faith." (*Id.*). Plaintiff further alleges that he and other Muslims were not provided a diet containing meat, while inmates of other religions received meals that included meat. (*Id.*). Plaintiff filed a grievance with Southport on

- 2 -

November 25, 2014, which the facility denied. (*Id.*). On December 15, 2014, Plaintiff appealed the denial of his grievance to Defendant, and Defendant affirmed the denial. (*Id.*).

Causes of action 14 and 26 concern the denial of Plaintiff's request to take a desired Islamic study correspondence course. (*Id.*). Plaintiff requested to participate in a course through Islamic Online University ("IOU"), and Southport denied that request. (*Id.*). According to Plaintiff, the only opportunities available to him as a result were "secular, Catholic, Christian, or Jewish schools and study." (*Id.*). Plaintiff filed a grievance on December 5, 2014, which Southport denied on the basis that IOU is not on the list of accredited institutions, a requirement under DOCCS Directive 4804. (Dkt. 9 at 4).

Causes of action 20 and 23, which Plaintiff asks to withdraw, concern the denial of his request to attend congregate religious services while housed in the Special Housing Unit ("SHU"). (*Id.*). Plaintiff filed a grievance on December 17, 2014, which was denied. (*Id.*). Plaintiff appealed the denial of his grievance to Defendant on December 29, 2014, and Defendant affirmed. (*Id.*).

## II.    Proceedings in this Court

Plaintiff filed his original complaint on April 6, 2015. (Dkt. 1). This Court granted Plaintiff leave to proceed *in forma pauperis* on September 30, 2015. (Dkt. 6). Plaintiff filed his amended complaint on November 30, 2015. (Dkt. 8). On July 11, 2016, the Court issued an order dismissing with prejudice certain claims and defendants. (Dkt. 12). The Court allowed Plaintiff's claims against Defendant in his individual capacity under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to go forward. (*Id.* at 4).

- 3 -

On September 19, 2016, Defendant moved to dismiss the complaint under Rule 12(b)(6). (Dkt. 14-1; Dkt. 14-2). On September 20, 2016, the Court issued a scheduling order, setting October 17, 2016, as the deadline for Plaintiff to respond in opposition to Defendant's motion and October 31, 2016, as the deadline for Defendant to submit a reply. (Dkt. 15). On October 26, 2016, Plaintiff filed a motion for injunctive relief (Dkt. 17) and a motion for summary judgment (Dkt. 18). The Court denied both motions in an order issued on November 7, 2016. (Dkt. 19). The Court also issued a revised Scheduling Order, setting December 21, 2016, as the deadline for Plaintiff to submit papers in opposition to Defendant's motion to dismiss and setting January 4, 2017, as the deadline for Defendant to file reply papers. (*Id.*). The Court stated that it would determine the motion on the papers submitted, without oral argument. (*Id.*). Plaintiff filed a response to the motion to dismiss on December 12, 2016. (Dkt. 21). In his response, Plaintiff requests to withdraw his claims regarding congregate religious services, but asks that the Court permit him to pursue those claims at a later date. (*Id.*). Defendant filed a reply on December 16, 2016. (Dkt. 23).

On February 6, 2017, the Court's Scheduling Order, entered on September 20, 2016, and mailed to Plaintiff, was returned to the Court as undeliverable. (Dkt. 24). On February 7, 2017, Defendant filed a motion to dismiss pursuant to Local Rule 5.2(d) on the grounds that Plaintiff had not updated his address. (Dkt. 25). On February 21, 2017, the Court entered a Text Order setting March 14, 2017, as the deadline for Plaintiff to respond to the motion to dismiss and setting March 21, 2017, as the deadline for Defendant's reply. (Dkt.

26). On February 27, 2017, the Court received Plaintiff's notice of change of address. (Dkt. 27).

## DISCUSSION

### I.    Motion to Dismiss Pursuant to Local Rule 5.2(d)

Local Rule of Civil Procedure 5.2(d) provides as follows:

> A party appearing *pro se* must furnish the Court with a current address at which papers may be served on the litigant. . . . The Court must have a current address at all times.    Thus, a *pro se* litigant must inform the Court immediately, in writing, of any change of address.  Failure to do so may result in dismissal of the case, with prejudice.

L.R. Civ. P. 5.2(d).  On February 6, 2017, mail sent to Plaintiff by the Court was returned as undeliverable (Dkt. 24); however, on February 27, 2017, Plaintiff provided the Court with an updated address—8050 Corona Street, District Heights, Maryland 20747 (Dkt. 27). Therefore, Plaintiff has provided the Court with an address where papers may be served. Plaintiff has adequately notified the Court of his change of address and is no longer in violation of Local Rule of Civil Procedure 5.2(d).

Accordingly, Defendant's motion to dismiss pursuant to Local Rule 5.2(d) is denied.

### II.    Rule 12(b)(6) Motion to Dismiss—Legal Standards

#### A.    Standard of Review

A court should consider a motion to dismiss "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citation omitted).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("The plausibility standard is not akin to a probability requirement. . . . [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." (citations, alterations, and internal quotation marks omitted)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration and citations omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration and citations omitted).

"It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.").

### B.    Scope of Review

"A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials." *Id.* at 559. That universe is limited to: (1) the facts alleged on the face of the complaint; (2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice. *Id.* Mere discussion or short quotation of a document does not amount to "incorporation by reference." *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989). Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

A court may also consider a document not expressly incorporated by reference but that is "nevertheless 'integral' to the complaint." *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005). A document is "integral" to the complaint "where the complaint relies heavily upon its terms and effect." *Id.* Even if a document is integral to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and that "there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).

## C.    First and Fourteenth Amendment Claims

Plaintiff alleges that a substantial burden was placed on his religious liberty and the exercise of his religion without penological purpose in violation of the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (Dkt. 8 at 3-8).

Under the First Amendment, "[p]risoners retain their right to religious freedom even when incarcerated." *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). "An inmate is therefore entitled to a reasonable accommodation of his religious beliefs." *Id.* "This includes religious dietary beliefs, as 'prison officials must provide a prisoner a diet that is consistent with his religious scruples.'" *Id.* (quoting *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992) (per curiam)). Prisoners also retain their constitutional right to participate in religious services. *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993).

To establish a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Hall v. Ekpe*, 408 F. App'x 385, 388 (2d Cir. 2010) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Id.* That is because an inmate's right to the free exercise of his religion "may only be infringed to the extent that such infringement is 'reasonably related to legitimate penological interests.'" *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). To determine whether that standard has been met, courts consider the four factors outlined in *Turner v. Safley*, 482 U.S. 78 (1987):

1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

*Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) (citing *Turner*, 482 U.S. at 89-90).

To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). If a court finds such discrimination, "the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests." *Benjamin*, 905 F.2d at 575. In evaluating whether that standard has been met, courts apply the *Turner* factors cited above. *See id.*

With regard to an inmate's religious dietary beliefs, "[a]ll that is required for a prison diet not to burden an inmate's free exercise of religion is 'the provision of a diet sufficient to sustain the prisoner in good health without violating [his religion's] dietary laws.'" *Abdul-Malik v. Goord*, No. 96 CIV. 1021 (DLC), 1997 WL 83402 at *1 (S.D.N.Y. Feb. 27, 1997) (alteration in original) (quoting *Kahane v. Carlson*, 527 F.2d 492, 496 (2d Cir. 1975); *see also Smith v. Nuttal*, No. 04-CV-0200(F), 2007 WL 837111 (W.D.N.Y. March 14, 2007) (dismissing claim that Muslim inmates were entitled to diet containing meat under Fourteenth Amendment).

In *Abdul-Malik*, the court held a bench trial on the plaintiff and class representative's claims regarding the failure of DOCCS[2] to provide Muslim inmates with Halal meat three to five times per week. 1997 WL 83402, at *1. The court rejected the plaintiff's claim that the defendant's failure to provide Muslim inmates with Halal meat three to five times per week substantially burdened their free exercise of religion, in violation of the First Amendment, because the plaintiff had not asserted that his religion required the consumption of meat, and, based on the evidence presented to the court, it was "undisputed that a Muslim may eat an exclusively vegetarian diet without violating his religion." *Id.* at *6. The plaintiff also argued that the defendant had violated the Equal Protection Clause by intentionally treating two religious minorities—Jews and Muslims—differently. *Id.* at *8. The plaintiff alleged that DOCCS had provided Jewish inmates with Kosher meat four times per week, but had provided Muslim inmates with Halal meat no more than once per week. *Id.* The court concluded that "using meat as a comparison of the diets sets up a false standard of measurement," and that a proper analysis revealed no disparate treatment: "All Jewish inmates in the general population who so desire receive nutritionally adequate meals which conform to the requirements of their faith, as do Muslim inmates." *Id.* The court further concluded that, even if the plaintiff had shown disparate treatment resulting from purposeful discrimination, the diet provided to the inmates would survive scrutiny, because the defendant had asserted that more Halal meat was not provided due to supply issues, and because the menu offered to Muslim inmates addressed the religious dietary

---

[2]     At the time that *Abdul-Malik* was decided, DOCCS was called the Department of Correctional Services, and it is referred to as such throughout that decision.

requirements of a number of different religious groups. *Id.* According to the court, each of the defendant's proffered reasons for the diet provided to Muslim inmates independently satisfied the requirements of the *Turner* test. *Id.*

### D.   Qualified Immunity

Government officials, like Defendant in this case, are generally protected from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991). In evaluating whether a government official is entitled to qualified immunity, a court must determine whether, if the plaintiff's allegations are true, the plaintiff's constitutional rights were violated, and whether the constitutional rights were clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).

### III.   Application

Defendant moves to dismiss Plaintiff's complaint on the ground that Plaintiff fails to state a claim upon which relief can be granted.

As to Plaintiff's dietary claims, causes of action 5 and 8, Defendant argues that, under *Abdul-Malik*, Plaintiff fails to state a First Amendment claim because he does not allege that the diet provided to him is not nutritious or that it violates his religion's dietary

laws. Furthermore, according to Defendant, the fact that Jewish inmates and others receive a diet containing meat has no bearing on Plaintiff's First or Fourteenth Amendment claims. Defendant also contends that, even if this Court disagrees with the holding in *Abdul-Malik*, Defendant is entitled to qualified immunity because it was objectively reasonable for him to rely on the court decisions squarely addressing the issue.

Plaintiff's claims are difficult to parse. Plaintiff states that he filed a grievance about "the lack of provision of Halal food for Muslims," and alleges that Muslims are "forced to be vegetarians and coerced into another faith." (Dkt. 8 at 3-8). Liberally construed, unlike the plaintiff in *Abdul-Malik*, Plaintiff does seem to be arguing that the diet provided by Defendant violates his religion's dietary laws.[3] Consequently, Defendant may not be entitled to qualified immunity due to his reliance on *Abdul-Malik* and its progeny. Defendant's motion to dismiss as to cause of action 5 is denied.

With respect to his Fourteenth Amendment claim, Plaintiff responds that, when the decision in *Abdul-Malik* was issued, a religious diet containing meat was provided only to Jewish inmates, and that diet is now provided to Rastafarians as well. Accordingly, Plaintiff contends, *Abdul-Malik* does not control the outcome of this case.

Construed liberally, Plaintiff's allegations are sufficient to state a Fourteenth Amendment claim. As the Court explained in *Abdul-Malik*, the proper inquiry is whether

---

[3]     The court in *Abdul-Malik*, hearing the case as a bench trial, had the benefit of evidence regarding Islamic dietary requirements. No such evidence is within the scope of this Court's review of Defendant's motion to dismiss. In other words, the Court is constrained to review Plaintiff's allegations as pleaded—which appear to include a claim that the diet provided violated the dietary laws of Plaintiff's religion.

Plaintiff and other inmates receive "nutritionally adequate meals which conform to the requirements of their faith." 1997 WL 83402, at *8. Although Defendant will have the opportunity to establish that any disparate treatment is reasonably related to legitimate penological interests, *see id.*, given that Plaintiff alleges that the meals he received failed to conform to his religious requirements, Plaintiff's cause of action survives a Rule 12(b)(6) motion to dismiss. Given the distinctions between Plaintiff's Fourteenth Amendment allegations and the allegations at issue in *Abdul-Malik*, Defendant may not be entitled to qualified immunity on the basis of his reliance on that case and its progeny. Defendant's motion to dismiss cause of action 8 is denied.

Regarding Plaintiff's claims based on the denial of his request to participate in an Islamic study correspondence course through IOU, causes of action 14 and 26, Defendant contends that Plaintiff fails to state a First or a Fourteenth Amendment claim. According to Defendant, Plaintiff does not allege that his religion dictates that he take online courses, nor does he allege "purposeful discrimination directed at an identifiable or suspect class." *Senkowski*, 54 F.3d at 1057. Defendant contends that IOU is not an accredited institution, which is required for approval of an online course under DOCCS Directive 4804. Consequently, Defendant argues, Plaintiff's request was denied because the requested course was not offered through an accredited institution, and not as a result of purposeful discrimination based on Plaintiff's religious designation. Defendant argues that, despite Plaintiff's contention that IOU is, in fact, accredited, the Court may dispose of that claim on a motion to dismiss because the list of universities accredited by DOCCS is part of the record in this case, and IOU is not on that list. Defendant also contends that Plaintiff fails

to allege that IOU, or any other Islamic educational institution, applied for accreditation and was denied, or that Plaintiff applied for accreditation on behalf of any such institution—allegations necessary to establish a claim for relief.

Defendant additionally argues that he is entitled to qualified immunity with respect to causes of action 14 and 26. According to Defendant, DOCCS Directive 4804 has never been challenged, and it was objectively reasonable for Defendant to rely on that rule because it serves a security purpose.

The Court finds, first, that the list of accredited institutions and the full text of the DOCCS Directive are not within the scope of the Court's review. Plaintiff did not incorporate either document by reference. An unincorporated document is "integral" to the complaint when the complaint "relies heavily on its terms and effect." *Goel*, 820 F.3d at 559. Nowhere in the complaint does Plaintiff rely on, or reference, the terms of the DOCCS Directive; and even if the list of accredited institutions is "integral" to the complaint, it is not clear that "no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111. Plaintiff contends that the list of accredited institutions that he received "was incomplete" (Dkt. 9 at 4), and it is unclear whether the list that Plaintiff received differs from the list submitted by Defendant.

Even so, construed liberally, Plaintiff's allegations concerning the correspondence course are not sufficient to state a First Amendment free exercise claim. Although, liberally construed, Plaintiff alleges that Islamic study courses were not available to him—he contends that the only options for "study" were through "secular, Catholic, Christian, and Jewish schools" (Dkt. 8 at 8)—Plaintiff does not allege that the unavailability of such

courses "substantially burden[ed] his sincerely held religious beliefs," *Hall*, 408 F. App'x at 388 (citation omitted). Plaintiff's only contention in that regard is the conclusory statement that the denial of his request to take the course through IOU "coerced [him] to choose a religious other than [his] own." (Dkt. 8 at 3-8).

Nor does Plaintiff state an Equal Protection claim. Nowhere in his pleadings does Plaintiff allege that Islamic educational institutions applied for and were denied accreditation, while institutions affiliated with other religions were granted accreditation. Consequently, Plaintiff does not allege facts that would support a finding of discriminatory accreditation practices. Plaintiff also does not allege that inmates of other religions were permitted to participate in correspondence courses while Plaintiff was denied the same opportunity on the basis of his religion.

Plaintiff's claims regarding his request to participate in an Islamic correspondence course are dismissed without prejudice. The Court cannot determine whether Defendant would be entitled to qualified immunity, even if Plaintiff stated a claim for relief, given that the DOCCS Directive is beyond the scope of the Court's review. District courts in this circuit are directed to provide a *pro se* litigant "every opportunity to present his claims." *Watkins v. Marchese*, No. 13 CIV. 3267(GBD)(SN), 2015 WL 4605660, at *7 n.9 (W.D.N.Y. July 31, 2015). It is not implausible that Plaintiff could allege facts consistent with his complaint that would be sufficient to state a claim for relief. Defendant's motion to dismiss is therefore granted as to causes of action 14 and 26, but without prejudice to Plaintiff filing an amended complaint.

Finally, Plaintiff does not oppose dismissal of causes of action 20 and 23, but he requests to withdraw those claims concerning the denial of the right to participate in congregate religious services without prejudice. Defendant requests that the Court dismiss Plaintiff's claims with prejudice because Defendant contends that Plaintiff should not be afforded a second opportunity to craft his claim with knowledge of Defendant's responding arguments. Furthermore, Defendant contends, even accepting every allegation made by Plaintiff as true, Plaintiff's claims fail.

Pursuant to the policy of providing *pro se* litigants with "every opportunity" to put forth a valid claim, Plaintiff's request to withdraw is granted and causes of action 20 and 23 are dismissed, although the Court exercises its discretion and the claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for failure to comply with Local Rule 5.2(d) (Dkt. 25) is denied.

Defendant's motion to dismiss pursuant to Rule 12(b)(6) (Dkt. 14) is granted in part and denied in part. The motion to dismiss is denied as to causes of action 5 and 8. With respect to causes of action 20 and 23, those claims are hereby dismissed without prejudice. With respect to causes of action 14 and 26, the motion to dismiss is granted as to those causes of action, although Plaintiff is granted leave to file an amended complaint as directed above and **within thirty (30) days** of the filing of this Decision and Order. If Plaintiff does **not** file an amended complaint as directed above, causes of action 14 and 26 will be dismissed with prejudice. Plaintiff is advised that an amended complaint is intended

to **completely replace** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all necessary allegations so that it may stand alone as the sole complaint in this action (i.e. including not only causes of action 14 and 26, but also causes of action 5 and 8). If Plaintiff does not file an amended complaint, the case will proceed against Defendant with causes of action 5 and 8 only.

Defendant is directed to file an answer, or otherwise respond, within 60 days of the date of this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 25, 2017
Rochester, New York